UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| TROY PIROLOZZI, ADMINISTRATOR | CASE NO. 5:07-CV-798 |
| Plaintiff, | |
| vs. | OPINION & ORDER [Resolving Doc. No. 74] |
| ERIC STANBRO, ET AL., | |
| Defendants. | |

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Before this Court is a motion for summary judgment filed by Defendant Thomas Hopkins ("Hopkins"). [Doc. 74.] Plaintiff Troy Pirolozzi, administrator of the estate of decedent Shawn C. Pirolozzi, Sr. ("Pirolozzi"), opposes the motion. [Doc. 101.] For the following reasons, the Court **GRANTS** Defendant Hopkins' summary judgment motion.

## I. Background

On June 13, 2005, Thomas Hopkins, a Bureau of Alcohol, Tobacco, & Firearms ("ATF") Special Agent and member of the Canton Gang Task Force ("CGTF"), was called to the scene of an incident occurring on Fourth Street in Canton, Ohio at approximately 10:10 pm. [Hopkins Dec., Doc. 74-3 at 1.] Defendant Hopkins received a police radio report that stated that a naked man, later identified as Shawn Pirolozzi, was running up and down the street, jumping upon and hitting cars as they passed.[1/] *Id.* Several minutes later, a Canton police officer, Eric Stanbro, also called for

[1/] The record contains ample evidence describing the series of events that transpired prior to Defendant (continued...)

assistance. Hopkins testified that he had heard over the radio that Pirolozzi was violently resisting the police officers and that the police officers' taser devices were not working properly. [Hopkins Dep., Doc. 101-9 at 28.] Defendant Hopkins and another member of the CGTF, Canton police officer Shawn Overdorf, responded to the call. [Hopkins Dec., Doc. 74-3 at 1-2.]

When Hopkins and Overdorf arrived at the scene, Pirolozzi, naked and covered in blood, was lying prone on the street and was handcuffed behind his back. [Hopkins Dec., Doc. 74-3 at 2.] Several Canton police officers were surrounding and attempting to restrain Pirolozzi on the ground. *Id.* at 2; Julio Dep, Doc. 74-12 at 21-24. Stanbro told Pirolozzi several times to stop moving, but Hopkins says that Pirolozzi continued to move around on the ground. [Hopkins Dec., Doc. 74-3 at 2; Hopkins Dep., Doc. 101-9 at 23-24.] Defendant Hopkins approached the scene and placed his right foot on top of Pirolozzi's left calf. [Hopkins Dec., Doc. 74-3 at 2.] Hopkins testified that he placed his foot on top of Pirolozzi "[j]ust to let him know there was another officer there." [Hopkins Dep., Doc. 101-9 at 26.]

As Defendant Hopkins kept his foot on top of Pirolozzi's calf, four Canton police officers held Pirolozzi down, kicked him, and struck him repeatedly in the neck and head region. [Police Video, Doc. 84-14; Julio Dep, Doc. 74-12 at 24-26; Burkhardt Dep., Doc. 74-13 at 20-24; Hopkins Dep., Doc. 101-9 at 25-26.] Hopkins says that his physical contact with Pirolozzi lasted for "a moment or two." [Hopkins Dep., Doc. 101-9 at 27.] A videotape from one of the police cars at the scene shows that, at the very most, Hopkins' foot remained on Pirolozzi's calf for approximately two minutes. [Police Video, Doc. 84-14.]

---

[1/](...continued)
Hopkins' arrival at the scene. Because the Defendant had no specific knowledge of those events at the time of the incident, however, those facts are irrelevant to this specific defendant's summary judgment motion.

After he believed that the Canton police officers had effectively restrained Pirolozzi, Hopkins walked away and began to talk to the shift supervisor and witnesses. Hopkins testified that, at that point, Pirolozzi was still breathing and groaning. [Hopkins Dec., Doc. 74-3 at 2.] Paramedics placed Pirolozzi on a stretcher and loaded him into a waiting ambulance. *Id.* The Canton EMS report states that, when Pirolozzi was placed into the ambulance, he was unresponsive and had a low pulse rate. [EMS Rep., Doc. 74-4.] Shortly after arriving at Aultman Hospital, Pirolozzi was pronounced dead at 10:40 pm. [ER Rep., Doc. 101-3 at 10, 13.]

The autopsy report for Shawn Pirolozzi lists multiple causes of death, specifically "excited delirium" and "multiple blunt and sharp force injuries to head, trunk and extremities, hypovolemia and positional asphyxia." [Autopsy Rep., Doc. 101-4 at 13.] The doctor who conducted the autopsy, Dr. Arternio Orlino, testified that Pirolozzi sustained no external or internal injuries to his calf region. [Orlino Dep., Doc. 74-14 at 54.]

On March 19, 2007, Plaintiff Troy Pirolozzi, brother of the decedent, filed this case against Defendants Canton Police Officers Eric Stanbro, William Guthrie, Jerry Fuelling, and Shawn Overdorf; Special Agent Thomas Hopkins; the City of Canton; ATF; and the United States. [Doc. 1.] In the complaint, the Plaintiff asserts numerous constitutional and tort law claims against the Defendants resulting from the June 13, 2005 arrest and death of the decedent. *Id.*

On June 28, 2007, the United States filed a notice of substitution for Defendant Hopkins. [Doc. 6.] On October 16, 2007, this Court ordered the substitution of the United States for Defendant Hopkins as to all common law tort claims. [Doc. 46.] On November 19, 2007, this Court dismissed Defendants ATF and the United States from the case because they are immune from suit for any constitutional violations and because the Plaintiff failed to exhaust his administrative remedies

under the Federal Tort Claims Act ("FTCA") as to all tort claims against them. [Doc. 58.]

On January 7, 2008, Defendant Hopkins filed the instant summary judgment motion. [Doc. 74.] On March 3, 2008, the Plaintiff opposed the motion. [Doc. 101.] The Defendant replied in support of his summary judgment motion on March 10, 2008. [Doc. 114.]

Defendant Hopkins seeks summary judgment on the Plaintiff's remaining constitutional claim that the Defendant violated the decedent's Fifth Amendment due process rights. [Doc. 1.]

**II. Legal Standard**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown,* 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.* Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86

(1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *Id.* at 586. Nor can the nonmoving party "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *Nat. Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir. 1997). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)); see also *Celotex,* 477 U.S. at 322. Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co.,* 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

## III. Discussion

In his complaint, the Plaintiff alleges that Defendant Hopkins violated the decedent's due process rights in contravention of the Fifth Amendment by failing "to act prudently and with reasonable care and to otherwise avoid the use of unnecessary, unreasonable, excessive and/or deadly force." [Doc. 1 at para. 40.] The Plaintiff also says that Defendant Hopkins violated the decedent's Fifth Amendment rights by acting with deliberate indifference to his due process rights and by failing to render or seek medical care for the decedent in a timely manner. *Id.* The Plaintiff thus raises three Fifth Amendment claims against the Defendant for (1) excess force, (2) deliberate indifference, and (3) failure to obtain medical care, as well as two derivative constitutional tort claims for

misrepresentation and conspiracy to commit these constitutional violations.[2]

The Court will address each claim in turn.

*A. Excessive Force Claim*

In his complaint, the Plaintiff has alleged an excessive force claim under the Fifth Amendment. The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. The Fifth Amendment's Due Process Clause applies to the federal government in the same way that the Fourteenth Amendment's Due Process Clause applies to the states. *See, e.g., DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 196 (1989); *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). Excess force claims, however, may only be properly analyzed as Fourth Amendment claims, not as claims for substantive due process under the Fifth Amendment. The U.S. Supreme Court has held:

> *[A]ll* claims that law enforcement officers have used excessive force- deadly or not- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.

*Graham v. Connor,* 490 U.S. 386, 395 (1989). *See also Ewolski v. City of Brunswick,* 287 F.3d 492, 507 (6th Cir. 2002).

Because this case arises out of a governmental seizure of the decedent, the Court may only evaluate the Plaintiff's excess force claim under the Fourth Amendment's objective reasonableness

[2] In his complaint, the Plaintiff alleges both a "wrongful death" and "survival" action based on the alleged Fifth Amendment violations. Because the Court concludes that Defendant Hopkins is entitled to summary judgment for all claims resulting from the alleged deprivation of the decedent's due process rights, the Court declines to address the issue of whether the Plaintiff, the decedent's brother, has standing to raise these constitutional claims on his own behalf.

standard. The Court therefore must dismiss the Plaintiff's Fifth Amendment excessive force claim against Defendant Hopkins for failure to state a claim upon which relief may be granted.

Even if this Court were to evaluate the Plaintiff's excess force claim under the Fourth Amendment, however, the Court finds that the claim fails. The Fourth Amendment's prohibition of unreasonable seizures limits the amount of force police officers may use during an arrest. *Graham*, 490 U.S. at 394. Specifically, officers may use only the degree of force necessary to effect an arrest. *Monday v. Oullette*, 118 F.3d 1099, 1104 (6th Cir. 1997). The Court must ask whether a reasonable officer on the scene would have employed a similar degree of force. *Id.*; *Smith v. Freeland*, 954 F.2d 343, 345-47 (6th Cir. 1992). The court must evaluate the facts of each case, paying careful attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or the public, and whether the suspect is actively resisting arrest or attempting to escape. *Graham*, 490 U.S. at 396-97.

Defendant Hopkins says that the excessive force claim against him must be dismissed because he has qualified immunity from suit. The doctrine of qualified immunity shields state actors from liability for certain discretionary acts. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In so doing, the doctrine gives state actors the freedom to perform their official duties without fear that even a slight misstep will trigger their financial ruin. *Wyatt v. Cole*, 504 U.S. 158, 167 (1992). Nevertheless, state actors lose this immunity when they violate clearly established constitutional rights of which a reasonable person should have known. *See Harlow*, 457 U.S. at 818.

The Sixth Circuit sets forth a three-part test for evaluating claims of qualified immunity:

> First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known;

> finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc) (internal citations omitted). "In resolving questions of qualified immunity, courts are required to resolve a 'threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" *Scott v. Harris,* 127 S. Ct. 1769, 1774 (2007) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). If the court determines that the alleged conduct did not violate a constitutional right, then the officer is entitled to qualified immunity for his actions. *Saucier,* 533 U.S. at 201.

Bearing in mind that this opinion only addresses the liability of the federal agent, the Court concludes that the Plaintiff has not presented sufficient evidence to show that Defendant Hopkins committed a constitutional violation based upon the alleged use of excess force. The Defendant says that he was called to the scene because Pirolozzi was "resisting arrest violently." [Hopkins Dep., Doc. 101-9 at 28.] The police videotape of the incident shows that Hopkins arrived at the scene at approximately 21:55:03. [Police Video, Doc. 84-14.] When the Defendant arrived on the scene, Pirolozzi was handcuffed behind his back and moving slightly while Canton police officers were gathered around him and shouting, "Stay down! Stop resisting!" *Id.* The Defendant ran over to Pirolozzi and placed his right foot on the decedent's left calf. This physical contact appears to have occurred at 21:55:13, only ten seconds after the Defendant is seen arriving on the scene. *Id.*

The parties do not dispute that this was the only physical contact that the Defendant had with the decedent. It is unclear from the videotape when the Defendant actually removed his foot from

the decedent's calf, but the tape seems to show that the officers had backed away from the decedent's legs by 21:57:00. [Police Video, Doc. 84-14.] Construing the facts in the light most favorable to the Plaintiff, the Defendant's contact with Pirolozzi may have lasted until 21:57:15 when the paramedics began to place Pirolozzi on the stretcher, approximately two minutes after Defendant Hopkins first approached the decedent. *Id.*

While the events that transpired between the Canton police officers and the decedent are extremely troubling, the Court cannot find that sufficient evidence exists to show that Defendant Hopkins himself engaged in excessive force. The Court concludes that when Hopkins arrived on the scene, he had an objectively reasonable, even if incorrect, belief that Pirolozzi was resisting arrest, based upon the radio calls that he received and the shouting and struggling that he witnessed upon exiting his vehicle. The Defendant attempted to assist the Canton officers by placing one foot on top of the decedent's calf. Defendant Hopkins did not shift all of his body weight on top of the decedent; he merely used one foot to signal to the decedent that officers were present near his feet. The autopsy report does not show any external bruising to Pirolozzi's calf region, let alone any internal bleeding or other injury due to the Defendant's physical contact, thus suggesting that the Defendant's actual contact with Pirolozzi was minimal. [Orlino Dep., Doc. 74-14 at 54-56.]

The Court thus finds that, even when examined under a Fourth Amendment analysis, Defendant Hopkins is entitled to qualified immunity as to the Plaintiff's excess force claim.

*B. Deliberate Indifference and Failure to Obtain Medical Assistance Claims*

The Plaintiff also says that Defendant Hopkins violated the decedent's Fifth Amendment rights by acting with deliberate indifference and by failing to timely obtain medical assistance.

In order to show that federal agent violated a plaintiff's due process rights, the plaintiff must

prove "that the challenged action was so 'egregious' that it can be said to be 'arbitrary in the constitutional sense.'" *Ewolski,* 287 F.3d at 510 (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998)). Due process "protects only against abuse of executive power which 'shocks the conscience.'" *Id.* The Sixth Circuit has explained that, while this "shocks the conscience" standard is somewhat flexible, it minimally "requires a showing beyond mere negligence." *Id.* (citing *Daniels v. Williams,* 474 U.S. 327, 332 (1986)).

The Sixth Circuit has held that, at least in the context of pretrial detention, a plaintiff may prove the "fault requirement" for a substantive due process violation "by showing that state officials were deliberately indifferent to the basic medical needs of detainees." *Ewolski,* 287 F.3d at 510. Deliberate indifference only arises when the state actor state "knows of and disregards an excessive risk to [the victim's] health or safety." *Id.* at 513 (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). In order to prove a due process violation for deliberate indifference, the state actor must have had "time to fully consider the potential consequences" of his conduct. *Id.* at 510 (internal citations omitted) As the Supreme Court has noted, "[W]hen unforseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates 'the large concerns of the governors and the governed.'" *Lewis,* 523 U.S. at 853 (internal citations omitted).

In this case, only ten seconds passed between the Defendant's arrival on the scene and his decision to place his foot on Pirolozzi's calf. [Police Video, Doc. 84-14.] The video does not clearly show when the Defendant removed his foot from the decedent's leg, but it appears that, at the very most, the contact lasted about two minutes. *Id.* The short time period in which this series of events transpired for Defendant Hopkins, particularly in light of the chaotic conditions under which the

Defendant was summoned to the scene, weighs heavily against the deliberate indifference claim. Defendant Hopkins did not have sufficient time to deliberate, let alone to know of and disregard the decedent's safety. Additionally, there is no evidence that the Defendant knew how long the decedent had already been on the ground when he arrived at the scene or that the decedent had been struggling to breathe such that he would have been immediately concerned about the dangers of positional asphyxia.

The Court also notes that the videotape shows that EMS paramedics, firefighters, and an ambulance were all present both before and during the time that Defendant Hopkins was on the scene. *Id.* Firefighter Christopher Burkhardt testified during his deposition that he and the other paramedics rendered medical treatment to Pirolozzi as soon as they believed that it was safe for them to approach the decedent. [Burkhardt Dep., Doc. 74-13 at 24.]

Importantly, the Court finds no evidence suggesting that Pirolozzi would have survived if Defendant Hopkins had acted more quickly to place Pirolozzi into the ambulance in the few minutes between when he arrived on the scene and when the decedent was actually taken to the hospital. Assuming that the Plaintiff's argument that the police officers caused Pirolozzi's death by striking him and holding him in a position in which he was unable to breathe is true, the videotape clearly shows that the decedent had been forced onto the ground, kicked, punched in the head and neck region, and tasered for some time before Defendant Hopkins even arrived. There is no evidence that the Defendant's later additional conduct, or his failure to act, contributed to the Plaintiff's death. The Court therefore concludes that Defendant Hopkins did not act with deliberate indifference or fail to seek timely medical treatment for Pirolozzi in violation of his due process rights under the Fifth

Amendment.[3]

**IV. Conclusion**

Having concluded that there is no genuine issue of material fact and that the Defendant is entitled to judgment as a matter of law, the Court **GRANTS** summary judgment to Defendant Hopkins as to all remaining claims against him. [Doc. 74.] Accordingly, the Court also dismisses as moot the Defendant's pending motions in limine. [Docs. 110, 118, 122, 123, 124.]

IT IS SO ORDERED.

Dated: April 28, 2008

s/ *James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE

[3] Because the Court concludes that Defendant Hopkins is not liable for any underlying constitutionally infirm conduct against the Plaintiff, the Court need not address the alleged derivative constitutional tort claims of conspiracy and misrepresentation raised by the Plaintiff. *See, e.g.*, *Owens v. Brown & Williamson Tobacco Corp.*, 1999 WL 617968, at *1 (6th Cir. 1999); *Stokes v. Sparks*, 1996 WL 452837, at *1 (6th Cir. 1996); *Allensworth-Cannaday v. Windham Exempted Village Sch. Dist.*, 2007 WL 3129818, at *5 (N.D. Ohio 2007).