UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                         :
TROY PIROLOZZI, ADMINISTRATOR   :
                                         :      CASE NO. 5:07-CV-798
                  Plaintiff,             :
                                         :
vs.                                      :      OPINION & ORDER
                                         :      [Resolving Docs. No. 83, 84]
ERIC STANBRO, ET AL.,                    :
                                         :
                  Defendants.            :
                                         :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Before this Court are motions for summary judgment filed by Defendant City of Canton and

Defendant Canton Police Officers Eric Stanbro ("Stanbro"), William Guthrie ("Guthrie"), Jerry

Fuelling ("Fuelling"), and Shawn Overdorf ("Overdorf") (collectively, the "Canton Defendants").

[Docs. 83, 84]  Plaintiff Troy Pirolozzi, administrator of the estate of decedent Shawn C. Pirolozzi,

Sr. ("Pirolozzi"), opposes the motions. [Docs. 99, 100.]

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the

Canton Defendants' motions for summary judgment.

## I. Background

In the early evening of June 13, 2005, Shawn Pirolozzi, a 31-year old man in otherwise good

health, apparently suffered an unexplained and sudden mental breakdown while in his apartment on

Fourth Street in Canton, Ohio.  At some point during that evening, a fire broke out in Pirolozzi's

apartment.  Around 9 p.m., the owner of a convenience store across the street, Richard Jennings,

Case No. 5:07-CV-798
Gwin, J.

heard shattering glass and saw Pirolozzi standing naked in the upstairs bedroom of his apartment, using his arms to break the windows. [Jennings Aff. Doc. 84-8 at 1-2.]  Police later discovered Pirolozzi's blood smeared in nearly every room of the apartment. [Police Photos, Doc. 84-15.]

At approximately 10 p.m., Pirolozzi, naked and covered in dried blood and feces, emerged from his home and began walking down the middle of Fourth Street.  Screaming, Pirolozzi stepped in front of, and leapt on top of, passing vehicles, leading eight witnesses to call 911 shortly after 10 p.m.  [911 Call Transcripts, Doc. 84-13; Pudder Aff., Doc. 84-10 at 1-2; McGuire Aff., Doc. 84-9 at 2.]  At one point, Pirolozzi jumped on top of a car with such force that his head and left hand cracked the windshield.  [Boles Aff., Doc. 84-11 at 1-2; Jennings Aff. Doc. 84-8 at 2.]  Pirolozzi may also have been unintentionally hit by at least one of these passing cars.  [Jennings Aff. Doc. 84-8.]

Defendants Eric Stanbro and William Guthrie were the first Canton police officers to respond to the 911 calls. [Stanbro Dep., Doc. 84-3 at 23-24.]  As Stanbro opened the door of his police cruiser, he asked Pirolozzi, standing approximately 10-15 feet away, what was happening. *Id.* at 25-26.  Pirolozzi ran at Stanbro, ignoring the police officer's commands to stop and stay back.  Stanbro tried to use pepper spray in Pirolozzi's face, but Pirolozzi merely wiped away the spray and continued to charge at Stanbro. *Id.* at 26; Guthrie Dep., Doc. 84-4 at 17.   Pirolozzi, at nearly 6'2" and 240 pounds, tackled Stanbro, who was 5'8" and 160 pounds, forcing him back onto the front seat of the police cruiser. [Stanbro Dep., Doc. 84-3 at 27, 56.]  Pirolozzi bit and hit Stanbro. *Id.* at 27; Boles Aff., Doc. 84-11 at 2.

Meanwhile, Officer Guthrie struck Pirolozzi from behind with his taser. [Guthrie Dep., Doc. 84-4 at 17-18.]  Pirolozzi screamed and began repeatedly screaming, "I love you!"  Pirolozzi then tried to grab the gun out of Stanbro's holster.  [Stanbro Dep., Doc. 84-3 at 32, 60.]  Guthrie and an

Case No. 5:07-CV-798
Gwin, J.

unnamed Canton firefighter, who was on the scene to combat the fire in Pirolozzi's apartment,
grabbed Pirolozzi's legs and dragged him out of the vehicle. [Guthrie Dep., Doc. 84-4 at 20; Jennings
Aff. Doc. 84-8 at 2.] At this point, Stanbro managed to handcuff Pirolozzi behind his back and forced
him on to the ground in a prone position. [Stanbro Dep., Doc. 84-3 at 31-32.] Pirolozzi continued
to repeatedly scream, "I love you!" *Id.* Stanbro and Guthrie then called for additional back-up on the
police radio. *Id.* An in-cruiser audio tape recorded part of these events that occurred in and around
the police cruiser. [Police Audio, Doc. 84-14.]

At that point, Officer Jerry Fuelling arrived on the scene. Most of the events that
subsequently transpired between Pirolozzi and the Canton police department were videotaped by a
police camera attached to Fuelling's cruiser. [Police Video, Doc. 84-14.]

As Fuelling arrived at the scene at 21:53:55[1], Pirolozzi, naked and handcuffed behind his back
tried to stand up. *Id.* As Guthrie and Stanbro wrestled Pirolozzi back on to the ground in a prone
position and shouted at him to "stop resisting," Stanbro administered several punches to Pirolozzi's
head and neck region. Repeating, Stanbro punched Pirolozzi in the head at a time when Pirolozzi
remained handcuffed behind his back. At 21:54:00, Pirolozzi was indisputably handcuffed and lying
face-down on the ground. *Id.*; Stanbro Dep., Doc. 84-3 at 72. Stanbro continued to hold Pirolozzi
against the ground in a prone position by placing his left knee on Pirolozzi's right shoulder and
turning Pirolozzi's head sideways. [Police Video, Doc. 84-14; Stanbro Dep., Doc. 84-3 at 34.]
Guthrie and Stanbro shouted to each other, "he's fucking crazy!" and "you ain't going nowhere now,
pal!" [Police Video, Doc. 84-14.] At 21:54:08, Fuelling drew his chemical spray, but did not actually

---

[1] While the clock display on the police videotape is admittedly incorrect as to the actual time of day, it is
accurate as to lengths of time and helpful in establishing when specific events occurred during the four-minute incident.

Case No. 5:07-CV-798
Gwin, J.

use it on the decedent.  *Id.*

At 21:54:12, the videotape shows that Pirolozzi, still lying face-down on the ground and handcuffed behind his back, was no longer moving. [Police Video, Doc. 84-14.] For the next thirty seconds or so, Stanbro kept his knee on top of Pirolozzi's shoulder, Fuelling stood on top of Pirolozzi's lower calves, and Guthrie stood nearby with his taser device. *Id.*

At 21:54:44, and with no apparent provocation, Stanbro again began to repeatedly punch Pirolozzi in the head and neck region. *Id.* Stanbro continued to strike the decedent in the neck region for the next thirty to forty seconds. *Id.* Fuelling stood and jumped on top of Pirolozzi's legs, while Guthrie kicked the left side of Pirolozzi's body.  *Id.*  At 21:54:52, Guthrie also applied his taser device in drive stun mode on Pirolozzi, but testified that the device did not seem to work. [Guthrie Dep., Doc. 84-4 at 26.] Pirolozzi can be heard moaning on the videotape. [Police Video, Doc. 84-14.]

Two more Defendants, ATF Special Agent Thomas Hopkins and Canton Officer Shawn Overdorf, arrived at the scene at approximately 21:55:03.  [Police Video, Doc. 84-14.] The Canton police officers gathered around Pirolozzi and shouted, "Stay down! Stop resisting!" *Id.* Hopkins placed his right foot on the decedent's left calf, and Overdorf placed his left foot on Pirolozzi's right thigh and his right foot on Pirolozzi's buttocks. [Overdorf Aff., Doc. 84-12 at 1; Hopkins Dec., Doc. 74-3 at 2.] At 21:55:07, Defendants Guthrie, Fuelling, Overdorf, and Hopkins are seen using their legs and feet to hold Pirolozzi down on the ground while Defendant Stanbro continued to punch Pirolozzi in the jaw region.  [Police Video, Doc. 84-14.]

At 21:55:26, Stanbro can be heard on the videotape asking if Pirolozzi "shit himself." [Police Video, Doc. 84-14.] As Canton paramedics watched, Stanbro delivered another blow to Pirolozzi's

Case No. 5:07-CV-798
Gwin, J.

neck.  *Id.*  All five of the Defendant Officers continued to hold down Pirolozzi's motionless body.

*Id.*  Nearly a minute later, at 21:56:44, an unnamed Canton officer notifies the police dispatch, "24,

we're secure on Fourth Street."  Over two more minutes passed before Pirolozzi was loaded on to

a stretcher and placed into the waiting ambulance.  *Id.*  During this period, Pirolozzi was kept in a

prone, belly-down position on the ground with his hands handcuffed behind his back.

When Pirolozzi was placed into the ambulance, he was unresponsive and had a weak pulse.

[EMS Rep., Doc. 100-2.] Upon arrival at Aultman Hospital approximately three minutes later,

Pirolozzi had no heart rhythm or pulse.  He was pronounced dead minutes later, at 10:40 p.m. [ER

Rep., Doc. 100-3 at 10, 13.]

On June 14, 2007, Dr. Arternio Orlino performed the autopsy on Pirolozzi.  [Autopsy Rep.,

Doc. 101-4.] After an internal and external examination of Pirolozzi, Dr. Orlino made final anatomic

diagnoses, including findings of "multiple wounds, bruises, abrasions of head, torso, extremities";

"Taser probe (1) found in torso (back) and two sites of 'Drive Stun' application"; "severe pulmonary

edema and congestion"; and "severe gastroesophageal reflux disease (GERD)."  *Id.* at 12.  Dr. P.S.

Murthy, the Stark County Coroner, concluded that the causes of death were "excited delirium" and

"multiple blunt and sharp force injuries to head, trunk and extremities, hypovolemia and positional

asphyxia." *Id.* at 13.[2]

On March 19, 2007, Plaintiff Troy Pirolozzi, brother of the decedent and representative of

Pirolozzi's estate, filed this case against individual Canton Police Officers Stanbro, Guthrie, Fuelling,

and Overdorf (the "Defendant Officers"); the City of Canton; Agent Hopkins; ATF; and the United

---

[2] Importantly, the Canton Defendants concede, for purposes of these summary judgment motions, that
positional asphyxia caused, at least in part, the death of Shawn Pirolozzi. [Doc. 84-1 at 7 n.44.]

Case No. 5:07-CV-798
Gwin, J.

States.   [Doc. 1.]   In the complaint, the Plaintiff asserts numerous constitutional and tort claims

against the Defendants resulting from the June 13, 2005 arrest and death of the decedent.   *Id.*

On February 18, 2008, the Canton Defendants filed motions for summary judgment as to all

claims against them.   [Docs. 83, 84.]   On March 3, 2008, the Plaintiff opposed both motions. [Docs.

99, 100.]   The Canton Defendants replied in support of their respective summary judgment motions

on March 10, 2008. [Docs. 115, 116.]

## II. Legal Standard

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any material fact and that the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).   The moving party has the initial

burden of showing the absence of a genuine issue of material fact as to an essential element of the

non-moving party's case. *Waters v. City of Morristown,* 242 F.3d 353, 358 (6th Cir. 2001). A fact

is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin,* 150

F.3d 594, 597 (6th Cir. 1998).

The moving party meets its burden by "informing the district court of the basis for its motion,

and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence

of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting

Fed. R. Civ. P. 56(c)). However, the moving party is under no "express or implied" duty to "support

its motion with affidavits or other similar materials negating the opponent's claim." *Id.* Once the

moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts

showing a triable issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86

Case No. 5:07-CV-798
Gwin, J.

(1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *Id.* at 586. Nor can the nonmoving party "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *Nat. Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir. 1997). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)); see also *Celotex,* 477 U.S. at 322. Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co.,* 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

### III. Discussion

This Court will first address the claims against the individual Canton police officers and then will proceed to analyze the claims against the City of Canton.

#### A. Liability of the Individual Police Officer Defendants

The Plaintiff brings claims under 42 U.S.C. § 1983 against the Defendant Officers, alleging that they used excessive force in violation of the Fourth Amendment and that they failed to obtain timely medical care for the decedent in violation of the Fourteenth Amendment. These claims form the basis for the Plaintiff's § 1983 wrongful death (Count I) and survivorship (Count II) actions in his complaint. [Doc. 1.]

Case No. 5:07-CV-798
Gwin, J.

The Defendant Officers argue that they are entitled to summary judgment on the Plaintiff's wrongful death claim because they have qualified immunity from suit.  The Defendant Officers say that their actions were objectively reasonable and that they did not violate a clearly established right. They further argue that the Plaintiff's survivorship claim should be dismissed as untimely.[3/]

### 1. The Plaintiff's § 1983 Claim for Excess Force

Section 1983 gives this Court jurisdiction over actions seeking recovery for constitutional deprivations suffered under the color of state law. 42 U.S.C. § 1983 (stating that every person who, under color of state law, causes "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . .").

The Fourth Amendment's prohibition of unreasonable seizures limits the amount of force that police officers may use during an arrest.  *Graham v. Connor,* 490 U.S. 386, 394 (1989).  Specifically, officers may use only the degree of force necessary to effect an arrest.  *Monday v. Oullette,* 118 F.3d 1099, 1104 (6th Cir. 1997).  In *Graham*, the Supreme Court held that claims that law enforcement officers have used excessive force during an arrest should be analyzed under the Fourth Amendment and its "reasonableness" standard.  *Id.* at 395.  In evaluating a particular use of force, the Court does not second-guess an officer's judgment from the comfort of chambers.  Rather, the Court asks whether a reasonable officer on the scene would have employed a similar degree of force.  *Smith v. Freeland,* 954 F.2d 343, 345-47 (6th Cir. 1992); *Monday,* 118 F.3d at 1104.  The court must evaluate the facts of each case, paying careful attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or the public, and whether the suspect

---

[3/] The Plaintiff has clarified that he "does not bring a separate state law claim for wrongful death or challenge immunity under Ohio state law." [Doc. 100 at 17.]

Case No. 5:07-CV-798
Gwin, J.

is actively resisting arrest or attempting to escape.  *Graham*, 490 U.S. at 396-97.

The Defendant Officers argue that they are entitled to qualified immunity from the Plaintiff's § 1983 excessive force claim.  The doctrine of qualified immunity shields state actors from liability based on their discretionary acts.  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  In so doing, the doctrine gives state actors the freedom to perform their official duties without fear that even a slight misstep will trigger their financial ruin.  *Wyatt v. Cole,* 504 U.S. 158, 167 (1992).

Nevertheless, state actors lose this immunity when they violate clearly established constitutional rights of which a reasonable person should have known.  *Harlow,* 457 U.S. at 818.  The doctrine thus offers no solace to "the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs,* 475 U.S. 335, 341 (1986).  The Sixth Circuit sets forth a three-part test for evaluating claims of qualified immunity:

> First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc).  *See also* *Scott v. Harris,* 127 S. Ct. 1769, 1774 (2007) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

Accordingly, in analyzing the Plaintiff's § 1983 excessive force claim, the Court looks first to whether the Plaintiff offers sufficient evidence of a constitutional violation.  If so, the Court decides whether the violation involved a clearly established constitutional right of which a reasonable person would have known.  Finally, the Court examines whether the Defendants' actions were objectively unreasonable.

Case No. 5:07-CV-798
Gwin, J.

First, reasonable facts, taken in the light most favorable to the Plaintiff, establish that a constitutional violation may have occurred. *Saucier,* 533 U.S. at 201. The Plaintiff contends that the Defendant Officers used excessive force during the decedent's arrest, in violation of the Fourth and Fourteenth Amendments. Construing the facts in the light most favorable to the Plaintiff means that the Court must assume that the Defendant Officers applied substantial force to the head, neck, torso, and legs of Pirolozzi, a mentally ill individual who was no longer resisting arrest or posing a threat to anyone in the vicinity, to keep him motionless on the ground in a prone position for several minutes with his hands handcuffed behind his back. The Court also must assume that the Defendants used a taser device, brachial stuns, kicks, punches, and physical force against the decedent while he was on the ground. Thus, the plaintiff alleges, and shows cognizable evidence demonstrating, sufficient facts to show a constitutional violation that is actionable under § 1983.

Second, the right to be free from excessive force is a clearly established right of which a reasonable police officer would know. The touchstone for this determination is "objective legal reasonableness." *Anderson v. Creighton,* 483 U.S. 635, 639 (1987) (citing *Harlow,* 457 U.S. at 819). The existence of a known legal right must be adequately particularized to put potential defendants on notice. *Id.* at 640. As the Sixth Circuit notes, "[Q]ualified immunity is proper unless 'it would be clear to a reasonable officer' that his use of excessive force 'was unlawful in the situation he confronted.'" *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 902 (6th Cir. 2004) (citing *Saucier,* 533 U.S. at 202). When looking to evidence of a clearly established right, a district court must generally "find binding precedent by the Supreme Court, its court of appeals or itself." *Russo v. Cincinnati,* 953 F.2d 1036, 1043 (6th Cir. 1992) (internal citation omitted).

Precedent clearly establishes the general right to be free from excessive force in the context

Case No. 5:07-CV-798
Gwin, J.

of a seizure. *Adams v. Metiva,* 31 F.3d 375, 386-387 (6th Cir. 1994). The Sixth Circuit has repeatedly found that force applied to an individual in police custody after that person has been subdued is "unreasonable and a violation of a clearly established right." *Champion,* 380 F.3d at 902.[4/] Even more importantly, the Sixth Circuit concluded in 2004, prior to the events that took place in this case, "[It is] clearly established that putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force." *Id.* at 903.[5/] Here, the Defendant Officers undoubtedly knew of the decedent's right to be free from excessive force.

Third, the Plaintiff has alleged sufficient facts to indicate that the Defendant Officers acted unreasonably. The Sixth Circuit recently noted that "even if a situation is 'tense, uncertain, and rapidly evolving,' that does not innoculate an officer from a charge that he crossed the line from subduing an individual to assaulting him." *Lawler,* 2008 WL at *3 (citing *Graham,* 490 U.S. at 397). A jury could easily conclude that it was objectively unreasonable for the Defendants to use significant pressure and force to hold Pirolozzi in a face-down prone position for several minutes and to continue to administer punches to his face and head and kicks to his body after he was handcuffed behind his back and effectively neutralized. The Sixth Circuit has expressly concluded, "Creating asphyxiating

_____

[4/] *See also Lawler v. City of Taylor,* 2008 WL 624770, at * 3 (6th Cir. 2008) (jury could find it unreasonable for police officer to use "knee strikes and elbow jab" after suspect was on the ground with officer on top of him); *Baker v. City of Hamilton,* 471 F.3d 601, 607 (6th Cir. 2006) ("the use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law"); *Phelps v. Coy,* 286 F.3d 295, 301 (6th Cir. 2002) (unreasonable to continue to hit suspect after he was restrained).

[5/] The Canton Defendants argue that none of the police officers placed any weight on Pirolozzi's back while he was restrained, let alone "substantial or significant pressure" in violation of clearly established law. *Champion,* 380 F.3d at 903. The Court notes that, for purposes of this summary judgment motion, it must construe the facts in the light most favorable to the Plaintiff. The Plaintiff, supported by the videotape evidence, says that the Canton Defendants did indeed use their physical weight to forcibly press down on the decedent's back, torso, head, and legs for several minutes.

-11-

Case No. 5:07-CV-798
Gwin, J.

conditions by putting substantial or significant pressure, such as body weight, on the back of an incapacitated and bound suspect constitutes objectively unreasonable excessive force." *Champion, 380 F.3d at 903*.

Defendant Officers Stanbro, Guthrie, Fuelling, and Overdorf have both the responsibility to protect the public from individuals in police custody and the responsibility to use only the degree of force necessary. On June 13, 2005, Pirolozzi's alarming and bizarre conduct necessitated police intervention, and the initial actions taken by Defendants Stanbro and Guthrie to handcuff and restrain Pirolozzi were likely essential to protect themselves, the public, and Pirolozzi himself. Once Pirolozzi, naked and clearly unarmed, was handcuffed behind his back and placed belly-down on the street, however, he no longer posed a threat to anyone. The further acts of physical force taken by the Defendants after Pirolozzi was restrained, and particularly after he had completely stopped moving, are disturbing in both their duration and intensity and are objectively unreasonable.[6/]

The Plaintiff offers sufficient evidence to show a constitutional violation of the decedent's clearly established right to be free from excessive force. These individual defendants are not therefore entitled to qualified immunity in this case. A jury may very well conclude that the use of force in this case was excessive under the circumstances. The Court therefore denies the Defendant Officers' summary judgment motion as to the Plaintiff's § 1983 excess force claim.

### 2. The Plaintiff's § 1983 Claim for Failure to Seek Timely Medical Treatment

_____

[6/] While a jury may find that not all of the individual Defendant Officers are liable under § 1983, the Court cannot conclude as a matter of law that any of the officers are entitled to qualified immunity. Even Defendant Overdorf, the last named officer on the scene, used both of his feet to stand on the decedent's right thigh and buttocks, thus shifting all of his weight on top of the decedent. [Overdorf Aff., Doc. 84-12 at 1; Police Video, Doc. 84-14.] Unlike the minimal physical force exhibited by federal agent Hopkins, it appears that all four Canton officers may have used gratuitous force to keep Pirolozzi on the ground.

Case No. 5:07-CV-798
Gwin, J.

In his complaint, the Plaintiff also brings a § 1983 claim against the Defendant Officers for their alleged failure to seek or render timely medical assistance for the decedent in violation of his Fourteenth Amendment due process rights.  The Defendants argue that they are entitled to summary judgment on the plaintiff's claim because they were not deliberately indifferent to the rights and medical needs of the decedent.  The Plaintiff does not respond to this argument.

In order to show that the Defendant Officers violated the decedent's due process rights to medical assistance, the Plaintiff must prove "that the challenged action was so 'egregious' that it can be said to be 'arbitrary in the constitutional sense.'" *Ewolski v. City of Brunswick,* 287 F.3d 492, 510 (6th Cir. 2002) (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998)).  Due process "protects only against abuse of executive power which 'shocks the conscience.'" *Id.* (internal citation omitted). The Sixth Circuit has explained that, while this "shocks the conscience" standard is somewhat flexible, it minimally "requires a showing beyond mere negligence."  *Id.*

The Sixth Circuit has held that, at least in the context of pretrial detention, a plaintiff may prove the "fault requirement" for a substantive due process violation "by showing that state officials were deliberately indifferent to the basic medical needs of detainees."  *Ewolski,* 287 F.3d at 510. Deliberate indifference only arises when the state actor state "knows of and disregards an excessive risk to [the victim's] health or safety." *Id.* at 513 (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).  In order to prove a due process violation for deliberate indifference, the state actor must have had "time to fully consider the potential consequences" of his conduct. *Id.* at 510-11 (internal citations omitted).

In this case, the videotape shows that EMS paramedics, firefighters, and an ambulance were present at all times during the allegedly unconstitutional acts. [Police Video, Doc. 84-14.] Firefighter

Case No. 5:07-CV-798
Gwin, J.

Burkhardt testified during his deposition that he and the other paramedics rendered medical treatment to Pirolozzi as soon as they believed that it was safe for them to approach. [Burkhardt Dep., Doc. 84-6 at 24.]  The record is also devoid of evidence suggesting that Pirolozzi would have survived if the Defendant Officers had acted more quickly to place Pirolozzi into the ambulance in the few minutes between when the allegedly excessive force ended and when the decedent was actually taken to the hospital.

The Court therefore concludes that the Defendant Officers did not act with deliberate indifference or fail to seek timely medical treatment for Pirolozzi in violation of his due process rights under the Fourteenth Amendment.  The Court grants summary judgment to the Defendant Officers on the Plaintiff's § 1983 failure to seek medical assistance claim.

### 3.  The Plaintiff's Survivorship Claims

The Defendant Officers argue that they are entitled to summary judgment on the Plaintiff's survivorship claims because they were untimely filed.  The Defendants say that the Plaintiff's claim for "damages for the conscious pain and suffering and necessary medical expenses incurred by the plaintiff" states a claim for assault and battery under Ohio's survival statute, which carries with it a one-year statute of limitations.  Because this case arises out of the events that occurred on June 13, 2005 and the present lawsuit was not filed until March 19, 2007, the Defendants say that the survivorship claims must be dismissed as untimely.

It is well-established that the statute of limitations for 42 U.S.C. § 1983 actions is governed by the limitations period for personal injury cases in the state in which the cause of action arose. *Wallace v. Kato,* 127 S. Ct. 1091, 1094 (2007).  The Supreme Court has explicitly rejected the Defendants' argument that § 1983 excessive force claims should be treated as assault or battery cases

-14-

Case No. 5:07-CV-798
Gwin, J.

for purposes of the statute of limitations because "[e]ven where intent is an element of a constitutional claim or defense, the necessary intent is often different from the intent requirement of a related common-law tort." *Owens v. Okure,* 488 U.S. 235, 249 (1989). In *Owens*, the Supreme Court held that "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Id.* at 249-50. In Ohio, the statute of limitations for personal injury actions is two years. Ohio Rev. Code § 2305.10; *Banks v. City of White Hall,* 344 F.3d 550, 553 (6th Cir. 2003).[7/]

The Plaintiff's claims are therefore timely and the Court denies summary judgment to the Defendant on this ground.

### B. Liability of the City of Canton

The Plaintiff also alleges that the City of Canton violated 42 U.S.C. § 1983 by failing to "screen, supervise, discipline, transfer, counsel or otherwise control" the defendant police officers who were known to engage in improper use of excessive force, for using a "police code of silence" to cover up the events at issue in this case and by misrepresenting the facts to the public, for failing to maintain and enforce policies for dealing with individuals like the decedent, and for failing to train or implement procedures regarding the use of deadly force and the dangers of restraining individuals in a way that could cause positional asphyxia. [Doc. 1.]

The Plaintiff concedes and abandons several of his claims against the City of Canton in his opposition to summary judgment. The Plaintiff admits that he "does not oppose immunity set forth

---

[7/] The fact that the § 1983 claims are brought as a survivorship action does not affect the applicability of the two-year personal injury statute of limitations. In authorizing § 1983 survivorship actions, the Sixth Circuit explained that "the survival of a cause of action is not the creation of an independent cause of action . . . It depends upon the prior existence of a cause of action for the deceased." *Hall v. Wooten,* 506 F.2d 564, 568-69 (6th Cir. 1974). This Court concludes, therefore, that the statute of limitations for the Plaintiff's survivorship claim is governed by the two-year limitations period for the underlying § 1983 claim.

Case No. 5:07-CV-798
Gwin, J.

by Ohio law or claim punitive damages against the municipality." [Doc. 99 at iii.]  Further, the Plaintiff does not respond to the City's arguments that they are not liable for the alleged failure to supervise or discipline the police officers; that they are not liable for the alleged failure to train their officers about how to deal with mentally ill individuals in custody; and that §1983 does not provide a cause of action for events that occur after the plaintiff's death, such as the alleged police cover-up of the events at issue in this case.  The Court agrees that the Plaintiff has failed to present sufficient evidence to withstand summary judgment on these unaddressed claims and the Defendants are entitled to judgment as a matter of law as to the § 1983 "cover up" claim about events that occurred after Pirolozzi's death.  *See Riley v. St. Louis County,* 153 F.3d 627, 630 n.3 (8th Cir. 1998).

The sole remaining cause of action raised by the Plaintiff against the City of Canton, therefore, is a § 1983 failure to train claim.  The Plaintiff asserts that the City is liable for (1) failing to train its officers regarding the existence of positional asphyxia and its association with forcible restraint, and (2) affirmatively training its officers to use excessive force against those in custody

The liability of municipal governments under § 1983 depends solely on whether the plaintiff's constitutional rights have been violated as a result of a "policy" or "custom" attributable to the local government.  *See Halloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000).  The City can only be held liable if its "official policy," not the acts of its executives or agents, were the source or cause of Pirolozzi's injury.  *Id.* at 773.  The Supreme Court has held:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Thus, a municipality cannot be made liable

-16-

Case No. 5:07-CV-798
Gwin, J.

under the doctrine of respondeat superior. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986).

A municipality's policy or custom must be the moving force of the constitutional violation to establish

the liability of the government body under § 1983. *Searcy v. City of Dayton*, 38 F.3d 282, 286

(1994).

To demonstrate municipal liability under § 1983 for failure to train local government

employees, it must be shown that: (1) the training program is inadequate to the tasks that officers

must perform; (2) that the inadequacy is caused by the city's deliberate indifference; and (3) that the

inadequacy is closely related to or actually caused the plaintiff's injury. *Kanavos v. Hardeman*, 162

F.3d 1161 (6th Cir. 1998). Deliberate indifference must reflect a deliberate or conscious choice by

the municipality. *City of Canton v. Harris*, 489 U.S. 378 (1989). A municipality may be deliberately

indifferent when "in light of the duties assigned to specific officers or employees the need for more

or different training is so obvious, and the inadequacy so likely to result in the violation of

constitutional rights . . ." *Id.* at 390.

*1. Motion to Exclude or Limit Murphy and Katsaris Expert Reports*

The City of Canton moves this Court to exclude or limit its consideration of the Murphy and

Katsaris expert reports provided by the Plaintiff in its consideration of the City's summary judgment

motion. [Doc. 121.] Murphy, a forensic consultant in law enforcement policies, and Katsaris, a

national consultant and trainer in criminal justice, both testify as to the adequacy of the City of

Canton's police training. The City argues that these reports should be excluded under Federal Rule

of Evidence 704(a) because they contain opinions as to the ultimate issue in the case, the

reasonableness of the Defendant Officers' actions, and invade the province of the court or the jury.

This Court finds that, at least insofar as this summary judgment motion is concerned, the

Case No. 5:07-CV-798
Gwin, J.

Murphy and Katsaris expert reports have not been presented to evaluate the reasonableness or credibility of the Defendant Officers' actions; rather, the reports are considered for their factual analysis of national law enforcement awareness of, and training about, positional asphyxia. While the Court in any event places little emphasis on the testimony presented by Murphy and Katsaris, for purposes of its consideration of summary judgment at least, the Court denies the City of Canton's motion to exclude these reports.

### 2. The City of Canton's Failure to Train Regarding Positional Asphyxia

In this case, the Court finds that the Plaintiff has presented sufficient evidence to show that the City of Canton's police training program is inadequate to the tasks that its officers must perform. The City of Canton requires its new police officers to complete the state-mandated Ohio Peace Officer's Training curriculum and requires all of its officers to attend an annual 40-hour in-service training program, with the content to be determined by the City. [McKimm Aff. Doc. 83-2 at 2-5.] Despite this general instructional program, however, it is undisputed that the City of Canton does not train its police officers regarding the existence of, or the risks and dangers associated with, positional asphyxia. David Clouse ("Clouse"), one of the City's police training officers, testified that, at least since 1998, Canton police officers have not been trained about positional or compression asphyxia. [Clouse Dep., Doc. 83-7 at 90.] Rather than arguing that the City was unaware of this cause of death in police custody cases, Clouse attempted to justify this lack of training by stating, "[W]e don't recognize it. It's not a recognized problem. There's documentation that says there's other things going on out there, and it's not because they're in the position or it's not because officers are putting weight on them. *Id.*

The City of Canton vaguely asserts in its summary judgment motion that it did in fact train

-18-

Case No. 5:07-CV-798
Gwin, J.

its officers regarding the dangers of positional asphyxia in the context of a 1995 training program on the use of pepper spray and its association with positional asphyxia.  In support of this position, the City presents a handout that Canton police officers received during training in 1995 that discusses positional asphyxia in police custody cases involving the use of pepper spray, as well as a similarly dated article written by the International Association of Chiefs of Police ("IACP") on these same points. [Certif. Docs., Doc. 83-6 at 7, 11.]

The Court first notes that the fact that the City of Canton only provided this information to its police officers one time in 1995, a full decade before the events that are at issue in this case occurred, simply highlights the inadequacy of the Canton police training program. Only two of the Defendant Officers in this case, for example, were even employed by the City of Canton in 1995. [McKimm Aff., Doc. 83-2 at 2.]

Moreover, these exhibits indicate that City of Canton's failure to train its police officers regarding the dangers of positional asphyxia may have resulted from the City's deliberate indifference. The 1995 handout states:

> [T]he cause of death in the majority of case[s] was determined to be positional asphyxia, aggravated by drugs, disease and/or obesity. . . Consequently, officer awareness and recognition of risk indicators are necessary to ensure subject safety and minimize the risk of sudden custody death.  These indicators generally include: bizarre/violent activity; obesity, especially "big bellies"; drug and/or alcohol involvement; and apparent ineffectiveness of spray.  Diligent observation and constant monitoring of subjects displaying any one or a combination of the indicators are procedurally warranted. *Furthermore, the use of maximal, prone restraint techniques should be avoided.  If prone positioning is required, subjects should be closely and continuously monitored.*

[Certif. Docs., Doc. 83-6 at 7 (emphasis added).]  There is no evidence that this handout, or any other materials or training on the topic of the risks of positional asphyxia, were ever distributed to Canton police officers after 1995.  Tragically, many of the risk factors for "sudden custody death"

-19-

Case No. 5:07-CV-798
Gwin, J.

indicated in this handout, including the suspect's bizarre activity, physical size, and apparent

ineffectiveness of pepper spray all were present in the situation involving Pirolozzi.

Positional asphyxia is a well-known cause of death in many police custody cases throughout

the nation. [Katsaris Rep., Doc. 99-3 at 7; Murphy Rep., Doc. 99-4 at 8, 18-22.] Dr. Murthy, the

Stark County Coroner, testified during his deposition that, while he had never dealt with a case

involving an individual suffering from excited delirium who subsequently died of positional asphyxia,

he has seen "many" cases involving positional asphyxia.  [Murthy Dep., Doc. 115-1 at 146.] Courts

in the Sixth Circuit have also repeatedly dealt with several cases involving compression or positional

asphyxia.  Indeed, in 2004, prior to the events that occurred in this case, the Sixth Circuit concluded:

> [It is] clearly established that putting substantial or significant pressure on a suspect's
> back while that suspect is in a face-down prone position after being subdued and/or
> incapacitated constitutes excessive force. . . Creating asphyxiating conditions by
> putting substantial or significant pressure, such as body weight, on the back of an
> incapacitated and bound suspect constitutes objectively unreasonable excessive force.

*Champion,* 380 F.3d at 903. *See also Jones v. City of Cincinnati,* 2008 WL 899030 (6th Cir. 2008).

Finally, the Court concludes that there is sufficient evidence that a jury could find that the

inadequacy of the City of Canton's police training regarding the forcible restraint and its association

with positional asphyxia is closely related to or actually caused Pirolozzi's death.  The Defendant

Officers testified as to their lack of awareness that the manner in which they restrained and held

Pirolozzi, even without additional force, may have caused his death. *See, e.g.,* Stanbro Dep., Doc.

116-3 at 84. The City of Canton admits, "Although positional asphyxia in cases like this one is based

on bad science, Canton must reluctantly concede for the purpose of this motion that it caused, at least

in part, Pirolozzi's death." [Doc. 84-1 at 7 n.44.]

The Court therefore denies summary judgment to the City of Canton as to the Plaintiff's §

Case No. 5:07-CV-798
Gwin, J.

1983 failure to train claim.

### 3. The City of Canton's Authorization of Excessive Force

The Plaintiff also alleges that the City of Canton has a policy of authorizing the use of excessive force and that its police office training encourages such a policy. The Court concludes that the Plaintiff has failed to offer sufficient evidence to raise material issues on this § 1983 claim.

In his deposition, Officer Clouse explained his decision to instruct Canton police officers in 2005 regarding ways in which to temporarily stun individuals in police custody. One of these self-defense methods that Clouse taught the officers included striking the individual in the jaw region to momentarily stun and perhaps render the individual unconscious. [Clouse Dep., Doc. 99-2.] Officer Stanbro referenced this instruction in his deposition. This lesson, when viewed in isolation, seems to permit unreasonable force against people in police custody, particularly in light of the fact that the officers were not given guidance as to the conditions under which such "brachial stuns" were appropriate or the physical injury or death that such actions could cause.

This evidence alone, however, falls short of establishing a "policy" or "custom" of the City of Canton. Municipal liability does not attach where "an otherwise sound program has occasionally been negligently administered." *Canton,* 489 U.S. at 391. The City of Canton has presented sufficient evidence to show that its general police training program does not condone, let alone endorse, excessive force by its police officers. The City of Canton's January 1, 1995 General Order, for example, specifically states that "[n]o police officer shall use more force in any situation than is reasonable and necessary under the circumstances. No police officer shall use force other than in accordance with law and established departmental orders." [Canton Gen. Ord., Doc. 83-5 at 1.] The City of Canton appears to have generally enforced this order and has procedures in place to monitor

Case No. 5:07-CV-798
Gwin, J.

and discipline officers who fail to abide by this mandate.

The Court therefore grants summary judgment to the City of Canton insofar as the Plaintiff claims that its training program explicitly authorized the use of excessive force.

### IV. Conclusion

For the reasons stated above, the Court **DENIES** the Defendant Officers' motion for summary judgment as to the Plaintiff's § 1983 excessive force claim. The Plaintiff is entitled to seek both wrongful death and survivorship damages as to this claim. The Court also **DENIES** Defendant City of Canton's summary judgment motion as to the Plaintiff's § 1983 failure to train claim. In all other respects, the Court **GRANTS** the Canton Defendants' summary judgment motions.

Accordingly, the Court also **DENIES** as moot the Defendant Officers' motion to stay expert discovery and trial pending the outcome of their summary judgment motion. [Doc. 137.]

IT IS SO ORDERED.


Dated: May 1, 2008                          s/           *James S. Gwin*
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE

-22-