UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
---------------------------------------------------------

|  |  |  |
|---|---|---|
| | : | |
| TROY PIROLOZZI, | : | CASE NO. 5:07-CV-798 |
| | : | |
| Plaintiff, | : | Judge James S. Gwin |
| | : | |
| vs. | : | REPORT & RECOMMENDATION |
| | : | [Regarding Doc. No. 279] |
| ERIC STANBRO, ET AL, | : | |
| Defendants. | : | Magistrate Judge James S. Gallas |
| | : | |

---------------------------------------------------------

On May 19, 2009, the jury which had heard this case in the Federal Court House located in Cleveland, Ohio, returned a verdict based on the June 13, 2005 arrest and death of decedent against defendant City of Canton, Ohio in favor of plaintiff Troy Pirolozzi, Administrator of the Estate of Shawn C. Pirolozzi, Sr., in the sum of $75,000 on a survivorship claim and $2,000,000 on a wrongful death claim under 42 U.S.C. §1983 and §1988 due to official use of excessive force. [1] On May 21, 2009, judgment was entered by the Court. Plaintiff has most definitely prevailed for purposes of 42 U.S.C. §1988(b), and now timely moves to amend judgment to add an award of attorney fees and for costs under the procedure outlined in Rule 54(d) of the Federal Rules of Civil Procedure. This matter was referred to this Court by the Honorable James S. Gwin, United States District Judge for report and recommended disposition. (ECF # 284).

---

[1] Defendants originally were Canton City Police Officer Eric Stanbro, Officer William Guthrie, Officer Jerry Fueling, Officer Shawn Overdorf, Special Agent Thomas Hopkins of the Federal Bureau of Alcohol, Tobacco & Firearms, the Federal Bureau of Alcohol, Tobacco & Firearms, the United States of America, and the City of Canton, Ohio.

5:07 CV 798                                    2

***Calculation of Reasonable Attorney Fees, Methodology:***

Plaintiff, as administrator, moves under 42 U.S.C. §1988(b) for an award of attorney fees and taxable costs in the amount of $528,965.85 incurred by his attorneys, Fieger, Fieger, Kenney, Johnson & Giroux, P.C. , whose office is located in Southfield, Michigan.  Plaintiff arrives at this figure using the "lodestar" method [2] of computing reasonable attorney fees.

The lodestar method of computation is a fee calculated in terms of the reasonable hours of service at a reasonable rate and is the fairest and most manageable approach to determine an award of attorney fees.  *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Pennsylvania v. Delaware Valley Citizens Council for Clean Air,* 478 U.S. 546, 564, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439, 455-56 (1986); *Blanchard v. Bergeron*, 489 U.S. 87, 89 n. 2, 109 S.Ct. 939, 942 n. 2, 103 L.Ed.2d 67 (1989).  The moving party must submit evidence supporting the hours worked and the rates claimed.  *Hensley v. Eckerhart*, 461 U.S. at 433, 103 S.Ct. at 1939.  Where the documentation is inadequate, the court may reduce the award accordingly.  *Id.*  The goal is to not

---

[2]  The U.S. Supreme Court has explained:

The federal courts did not swiftly settle on hourly rates as the overriding criterion for attorney's fee awards. In 1974, for example, the Fifth Circuit issued an influential opinion holding that, in setting fees under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k) (1970 ed.), courts should consider not only the number of hours devoted to a case but also 11 other factors. *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-719 (C.A.5 1974). The lodestar method did not gain a firm foothold until the mid-1970's, see *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp*., 487 F.2d 161 (C.A.3 1973), appeal after remand, 540 F.2d 102 (1976), and achieved dominance in the federal courts only after this Court's decisions in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), and *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). (footnote omitted).

*Gisbrecht v. Barnhart,* 535 U.S. 789, 801, 122 S.Ct. 1817, 1824 - 1825, 152 L.Ed.2d 996 (2002).

5:07 CV 798                                      3

overcompensate counsel with a "liberal" fee, but to award the "reasonable" fee necessary to encourage competent lawyers to undertake the representation.  *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).[3]


***Reasonable Hourly Rate:***

Plaintiff requests:  $1,000 per hour for the work performed by Geoffrey Fieger; $600 per hour for the work performed by Paul Broschay; $600 per hour for the work performed by Larry Slagle; and  $300 per hour for the worked performed by unidentified "appellate attorneys."  Canton contends that plaintiff has failed to establish his entitlement of the requested fees with affidavits from other attorneys, with similar cases that have awarded such an amount in the Northern District of Ohio, or by referencing any state bar association guidelines. Canton claims that the plaintiff simply uses his counsels' reputation and its multi-million dollar verdict track record as justification for such a high hourly rate. Using the rates for downtown Cleveland attorneys found in the Ohio Bar Association for 2007  "Economics of Law Practice in Ohio Survey,"  Canton contends that the requested attorney fees in this case would surpass the 95th percentile of  $389 per hour for civil rights matters. [4]

Generally, the " key focal point" is counsel's normal billing rate  and this rate provides the "reasonable point of departure" for determining the prevailing market  rate. *James v. Runyon*, 868

---

[3] No hearing was conducted since the parties chose to submit the matter on a series of briefs, affidavits and supporting exhibits.  Under these circumstances no hearing is required.  See *Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1402 (6th Cir. 1995).

[4] The Ohio State Bar Ass'n survey of hourly billing rates in its "Economics of Law Practice in Ohio Survey" serves "as a point of reference" for assessing the reasonableness of counsel's billing rates. See *Gonter v. Hunt Valve Co., Inc*, 510 F.3d 610, 618 n. 6 (6th Cir. 2007).

5:07 CV 798                                          4

F.Supp. 911, 913 (S.D. Ohio 1994); *Kelley v. Metropolitan County Bd. of Ed.*, 773 F.2d 667, 683 (6th

Cir. 1985)(*en banc*) disapproved on other grounds *Pennsylvania v. Delaware Valley Citizens'*

*Council for Clean Air.*, 484 U.S. 711,717 n 4, 107 S.Ct. 3078, 3082 n.4, 97 L.Ed.2d 585

(1987)."[T]he hourly rate charged by an attorney for his or her services will normally reflect the

training, background, experience and skill of the individual attorney." *Northcross v. Bd. of Ed. of*

*Memphis City Schools*, 611 F.2d 624, 638 (6th Cir. 1979)(overruled on other grounds); and see

*Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616-17 (6th Cir. 2007); *Barnes v. City of Cincinnati*,

401 F.3d 729, 745 (6th Cir. 2005)(applying counsel's current rate); *Blum v. Stenson,* 465 U.S. at 896

n.11, 104 S.Ct. at 1547 n. 11("[T]he critical inquiry in determining reasonableness is now generally

recognized as the appropriate hourly rate. And the rates charged in private representations may

afford relevant comparisons.").   "[T]he prevailing market rate [is] defined as the rate that lawyers

of comparable skill and experience can reasonably expect to command within the venue of the court

of record." *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir. 2004)(citing *Adock-Ladd v. Secretary of*

*Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). When counsel's normal billing rates do not align with

prevailing market rates "it is not an abuse of discretion for a court to apply local market rates."

*Wayne v. Village of Sebring*, 36 F.3d 517, 553 (6th Cir. 1994), *cert. denied*, 514 U.S. 1127 (1995);

and see *Coulter v. Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986)("a renowned lawyer who customarily

receives $250 an hour in a field in which competent and experienced lawyers in the region normally

receive $85 an hour should be compensated at the lower rate.(footnote omitted)").


        Of course, for every rule there is an exception, and in this matter that exception is the circuit-

originated exception for the "out-of-town specialist." See *Hadix v. Johnson,* 65 F.3d 532, 535 (6th

5:07 CV 798                                      5

Cir.1995)(citing *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768-69 (7th Cir.1982); *Maceira v.

Pagan*, 698 F.2d 38, 40 (1st Cir.1983)); and see *Louisville Black Police Officers Org. v. City of

Louisville*, 700 F.2d 268, 278 (6th Cir. 1983)(citing *Charapliwy*).  Plaintiff cites *Louisville Black

Police Officers Org.* for the proposition that "district courts are free to look to national markets, an

area of specialization or any other market they believe is appropriate to fairly compensate attorneys

in individual cases." *Id.*, 700 F.2d at 278.  It can be easily inferred that the firm Fieger, Fieger.

Kenney, Johnson and Giroux was hired in this matter for  prior success in litigation of this type, and

the firm presents an impressive list of large settlement and  verdict successes for this court's perusal.


        However, *Hadix* makes clear that when the district court formulates a reasonable fee along

this detour from prevailing community market rates, the court must consider and determine:

> (1) whether hiring the out-of-town specialist was reasonable in the first instance [;]
> and (2) whether the rates sought by the out-of-town specialist are reasonable for an
> attorney of his or her degree of skill, experience, and reputation.

*Hadix v. Johnson,*  65 F.3d at 535.

 *Hadix* itself illustrates, though, the initial hurdle of the measure of reasonableness in retaining an

out-of-town specialist is substantial. [5]

---

[5] *Hadix* explained:
In the case at bar we are persuaded that the fee petitioners failed to carry the initial burden of showing
that it was necessary to resort to an out-of-town specialist. The record is devoid of any suggestion that
local counsel made any attempt to investigate the availability of competent counsel in the local market.
The petitioners seek to justify their choice of Ms. Alexander by pointing to her nationally recognized
expertise in institutional reform litigation, as well as her familiarity with the case. But Section 1988
does not guarantee civil rights plaintiffs the best counsel in the country; it guarantees them competent
counsel. Proof that Ms. Alexander has a national reputation for expertise in this kind of litigation does
not constitute proof that her expertise was necessary in this phase of the present litigation.

*Hadix v. Johnson,* 65 F.3d at 535.

5:07 CV 798                                          6

     Plaintiff does not attempt to justify whether hiring an out-of-town specialist was reasonable in the first instance, and retreats from the specialist route. Instead, his reply refers to a fee award in *Project Vote v. J. Kenneth Blackwell*, Case No. Case No.1:06 CV 1628, 2009 WL 917737 (N.D. Ohio),  a factually dissimilar case, cited for the  award of fees calculated at $450.00 per hour to lead counsel based on community rates. Although both plaintiff and Canton refer to that decision, albeit for opposing points, this raises a separate issue over the prevailing market rate "customarily charge[d] in the community for similar services." See *Louisville Black Police Officers unnecessary,* 700 F.2d at 276(quoting *Northcross v. Bd. of Ed. of Memphis City Schools*, 611 F.2d 624, 638 (6th Cir. 1979)); *Blum*, 465 U.S., at 896, n. 11, 104 S.Ct., at 1547, n. 11; *Missouri v. Jenkins by Agyei,* 491 U.S. 274, 286, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989).  Precise parameters of  what are "similar services" have not been defined.  Are they as basic as drafting a will versus any form of litigation or are the divisions of "similar services" to be made more discretely, and, if so, just how discrete are those subdivisions and where are those divisions to be drawn?  Referring again to the fee compendium from the Ohio State Bar Ass'n, Canton argues that as a personal injury matter, counsel in this matter would on average merit $250.00 per hour, or as a municipal law case, $240.00 per hour.

     Fortunately, it is unnecessary to resolve whether the attorney fee determination in a voter registration case is a similar service and serves a model for determining attorney fees in a Fourth Amendment excessive force case.  Plaintiff and Canton are now  reading off the same page.  Canton while maintaining that plaintiff has failed to establish the prevailing market rate,  proposes that the

5:07 CV 798                                              7

fee rates requested by the plaintiff should be changed to the following: $400 per hour for Mr. Fieger,

$200 per hour for Mr. Broschay, $100 per hour for Mr. Slagle. Lastly, Canton contends that no fee

should be awarded to any of the anonymous "appellate attorneys" on the basis that there is no

evidence at all to prove any hourly amount for them. The first three concessions are reasonable and

under the circumstances, generous.


       Plaintiff finally urges the court to augment the fees requested using the 12 "*Johnson* factors"

for fee enhancement claiming that the fees should be multiplied due to factors 1, 2, 3, 8, 9 and 12:

(1) time and labor required; (2) novelty and difficulty of the questions presented; (3) skill needed to

perform the legal service properly; (8) amount involved and the results obtained; (9) experience,

reputation, and ability of the attorneys; (12) awards in similar cases. See *Johnson v. Georgia

Highway Express, Inc.*, 488 F.2d 714, 717-719 (C.A.5 1974). [6] The *Johnson* factors may be applied

when the court is considering the initial request or when the court is considering a request for

attorney fee enhancement. See *Jordan v. City of Cleveland*, 464 F.3d 584, 604 (6th Cir. 2006)(citing

*Barnes* 401 F.3d at 745); *Paschal v. Flagstar Bank*, *FSB*, 297 F.3d 431, 435 (6th Cir. 2002); but see

*Blum*, 465 U.S. at 895-900, 104 S.Ct. at 1547- 1551(criticizing the application of *Johnson* factors

for upward adjustment as duplicative of the initial calculation.); *Hensley v. Eckerhart*, 461 U.S. 424,

434 n. 9, 103 S.Ct. 1933, 1940 n.9, 76 L.Ed.2d 40 (1983)("The district court also may consider the

_____

       [6] The 12 factors set forth by the *Johnson* court are: (1) the time and labor required; (2) the novelty and difficulty
of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by
the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time
limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the
experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of
the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart,* 461 U.S. at 430 n.3, 103 S.Ct. at 1937 n.3; *Blanchard v. Bergeron,* 489 U.S. at 92, 109 S.Ct. at
943.

5:07 CV 798                                     8

other factors identified in *Johnson v. Georgia Highway Express, Inc*., . . . though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.(citation omitted).").

As for the first and second factors, for time and labor to form a basis for enhancement, plaintiff must demonstrate that counsel was exceptionably efficient, using remarkably little time. See *Blum*, 465 U.S. at  898, 104 S.Ct. at 1549. Plaintiff's request for counsel's  fees is based on 692 hours with all but 6 hours attributed to two attorneys. That does not appear to be extraordinarily efficient use of time. As for novelty and complexity of the issues, they  " presumably were fully reflected in the number of billable hours recorded by counsel." *Blum*, 465 U.S. at 898, 104 S.Ct. at 1549; *Perotti v. Seiter*, 935 F.2d 761, 765 (6th Cir. 1991).

The experience, reputation and ability of counsel "generally is reflected in the reasonable hourly rate." *Blum*, 465 U.S. at 899, 104 S.Ct. at 1549; *Perotti v. Seiter,* 935 F.2d at 765.  However, it may become a valid reason for an upward adjustment "in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rate and that the success was 'exceptional.'" *Blum*, 465 U.S. at 899, 104 S.Ct. at 1549 (citing *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. Plaintiff's list of counsel's past verdicts and settlements does not establish "exceptional' success in this matter. In fact, the verdict in this matter appears to be typical of outcomes in other cases listed by counsel,  and the amount plaintiff requested for attorney fees ($496,560.00) is nearly one-quarter of the verdict obtained.  Further, "acknowledgment of the 'results obtained' generally will be subsumed within

5:07 CV 798                                        9

other factors used to calculate a reasonable fee." *Perotti v. Seiter,* 935 F.2d at 765 (quoting *Blum,*

465 U.S. at 900, 104 S.Ct. at 1549-50). There is no basis to grant the request for fee enhancement

based on the other factors of amount involved, results obtained and awards in similar cases.


        Accordingly, Canton's concession has provided the basis for the prevailing market rate for

fee rates requested by the plaintiff as follows: $400 per hour for Mr. Fieger, $200 per hour for Mr.

Broschay, $100 per hour for Mr. Slagle.


**_Reasonable Number of Hours:_**

        Plaintiff request 174.00 hours for Mr. Fieger's services, 512.35 hours for Mr. Broschay's

services and 6.00 hours for Mr. Slagle's services as counsel in this matter, and these are substantiated

in the itemized bill for costs (See ECF # 278).  Canton has focused its arguments primarily on the

rates sought and overall has very few objections to the second component of  the lodestar method

of the reasonableness of the  number of hours expended.

*Post-trial matters*:

        Canton object to the inclusion of 10 hours for motion for new trial and 2.5 hours for motion

for prejudgment interest as "unreasonable." Plaintiff's reply voices no opposition.  Actually, the

motion for prejudgment interest was unsuccessful. (See Order July 31, 2009, ECF # 291). It presents

a discrete claim and "[w]ork on an unsuccessful claim cannot be considered to have been 'expended

in pursuit of the ultimate result achieved' where the plaintiff has presented distinctly different claims

for relief based on different fact and legal theories." *Imwalle v. Reliance Medical Products, Inc*., 515

F.3d 531, 552 (6th Cir. 2008)(quoting *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940). The motion for

5:07 CV 798                                               10

new trial argues for  *additur*. (ECF # 275). "The Seventh Amendment generally prohibits a Court

from granting an *additur* after federal jury trials. *Dimick v. Schiedt*, 293 U.S. 474, 486-87, 55 S.Ct.

296, 79 L.Ed. 603 (1935); see also *Traylor v. United States*, 396 F.2d 837, 840, n. 4 (6th Cir.1968);

*Clay v. Gordon*, No. 98-6408, 205 F.3d 1339, 2001 WL 191936 at *3 (6th Cir. Feb.10, 2000)."

*Brown v. Siebert*  2006 WL 572695, 2 (W.D.Tenn.). Presumably the motion for new trial will be

dismissed and that claim too will be unsuccessful. Accordingly, a reduction of 12.5 hours from Mr

Broschay's time is warranted.


*Delegatable clerical tasks:*

          Canton seeks a further reduction for 10. 25 hours expended by Mr. Broschay in preparation

of subpoenas. Again, plaintiff's reply voices no opposition.  This is a task that could have been

delegated to a paralegal. [7] On the other hand, there is no evidence that in this legal community

paralegal costs are absorbed into overhead, as Canton appears to argue. "[A]ttorney's fees ha[ve]

traditionally subsumed both the attorney's personal labor and the labor of paralegals and other

individuals who contributed to the attorney's work product." *Richlin Sec. Service Co. v. Chertoff*, -

U.S.-, 128 S.Ct. 2007, 2014, 170 L.Ed.2d 960 (2008)(citing *Missouri v. Jenkins,* 491 U.S. at  285,

---

[7]  The Western District of Michigan has noted:

The Supreme Court of Oklahoma has identified a useful list of common tasks performed by paralegals,
including interviewing clients and witnesses, drafting pleadings and other documents, researching legal
issues, researching public records, preparing discovery requests and responses, scheduling depositions,
preparing notices and subpoenas, summarizing depositions and other discovery responses, coordinating
and managing document production, organizing pleadings and trial exhibits, preparing witness and
exhibit lists, preparing trial notebooks, preparing for the attendance of witnesses at trial, and assisting
attorneys at trial. See *Taylor v. Chubb Group of Ins*. Cos., 874 P.2d 806, 809 (Okla.1994).

*Communities for Equity v. Michigan High School Athletic Ass'n* , 2008 WL 906031, 12 (W.D.Mich.).

5:07 CV 798                                                      11

109 S.Ct. 2470.). Fee applicants must bill for lesser rate for paralegal time. See *Missouri v. Jenkins*, 491 U.S. at 288 n. 10, 109 S.Ct. at 2472 n. 10.  Accordingly, a 75% reduction in Mr. Broschay's time from 10.25 hours to 2.5 hours is warranted to account for this inefficient use of time expended performing  clerical tasks.


*Travel Time:*

        Canton agrees that travel time is compensable but argues that it should be awarded at a reduced rate. Canton points out that 22 hours were reported by Mr. Broschay related to deposition travel and 24 hours for travel for court appearances. Again, plaintiff voices no opposition in his reply.  Respondent, though, has not offered proof that counsel's billed amount for travel time is reduced in this legal market. See *Perotti v. Seiter*, 935 F.2d at 764.  However, here the concern is that additional travel costs were incurred because plaintiff chose to use counsel located in the Detroit area, rather than local counsel, and as explained previously there has been no justification for an out-of-town specialist. See *Hahnemann University Hosp. v. All Shore, Inc.*, 514 F.3d 300, 311 (3ʳᵈ Cir. 2008)(citing *Interfaith Community Organization v. Honeywell Intern., Inc.*, 426 F.3d 694, 710 (3ʳᵈ Cir.2005)("[U]nder normal circumstances, a party that hires counsel from outside the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel."). [8]  This resulted in waste of counsel's time which is not justifiably chargeable to Canton.  Accordingly, travel time related to depositions is reduced 50% to 11 hours of travel time for Mr. Broschay, and travel

------

        [8]  Mr. Slagle served as local counsel and the extent of his involvement was to defend at six depositions. Canton has conceded that a reasonable fee for his time is $100.00 per hour and do not seek to eliminate the amount of time requested by plaintiff for his services.

5:07 CV 798                                          12

time for court appearances is eliminated as unnecessary. See *Doe v. Porter*, 370 F.3d 558, 565 (6th

Cir. 2004).


*Appellate Counsel:*

Plaintiff includes a request for the services of Mr. Michael Dezsi for $300.00 per hour for 38.5

hours. Canton objected because "there is no evidence at all to award any hourly amount to the

anonymous 'appellate attorneys.'" Canton was partially correct, appellate counsel was not identified

in the itemized schedule. (See ECF # 278 p. 29).  Appellate counsel has now been unmasked, but

Canton cannot seriously contend that it was unaware of the identity of opposing counsel on its appeal

from denial of the police officers' motion on qualified immunity. (See Order May 1, 2008, ECF #

144; Notice of Appeal, ECF #145). In any event, plaintiff did prevail in obtaining a dismissal of

defendants' appeal. The Sixth Circuit ruled that it lacked jurisdiction over this interlocutory appeal

because defendants would not concede every fact set forth by the district court in its denial of

qualified immunity upon disputed facts viewed in the light most favorable to plaintiff (See Order

filed Dec. 15, 2008, Sixth Circuit Case No. 08-3680, ECF # 175).


The district court does have jurisdiction under 42 U.S.C. §1988 to award attorney fees for

work done on appeal under its fact-finding authority. See *O'Bryan v. County of Saginaw,*

*Michigan*,722 F.2d 313 (6th Cir.1983); *Smith v. Detroit Board of Education*, 728 F.2d 359 (6th

Cir.1984); *Kelley*, 773 F2d at 690 (Wellford J. concurring); *Akron Center for Reproductive Health*

*v. City of Akron,* 604 F. Supp. 1275, 1284 (N.D. Ohio 1985). However, other than a calculation

totaling the number of Mr. Dezsi's hours from unspecified time periods, there are no facts presented

5:07 CV 798                                             13

to the court for its scrutiny.  No usual billing rate is provided nor any evidence of a reasonable

prevailing market rate for counsel's services on appeal.


It is not an abuse of discretion to deny attorney fees when the submission is "manifestly

inadequate" in order to encourage counsel to "maintain adequate records and submit reasonable,

carefully calculated and conscientiously measured claims." *Jordan v. U.S. Dept. of Justice*, 691 F.2d

514, 518 (D.C. Cir. 1982). However, it would be unduly harsh to invoke this prophylactic measure

absent evidence of bad faith, or gross exaggeration. *Id.*; and see *Budget Rent-A-Car System, Inc., v.

Consolidated Equity LLC*, 428 F.3d 717 (7th Cir. 2005);  *Project Vote v. Blackwell,* 2009 WL

917737, at *8.  Such malice is not present.


Plaintiff states in his reply that Mr. Dezsi was admitted to the bar in 2002, worked under a

Circuit Judge, and regularly appears in the Sixth Circuit and trial courts in Michigan. The

undersigned finds that although there is no evidence substantiating this fee request from Mr. Deszi

and plaintiff's proffer is unsubstantiated, the district court is compelled arrive at a figure. To do

otherwise would be an abuse of discretion. It appears that appellate counsel has several years

experience and is active and in good standing with the state bar of Michigan (See

www.michbar.org/).  With this scant information, a fee computed at the rate of $100.00 per hour is

reasonable and comparable to the rate Canton was willing to concede was reasonable for Mr. Slagle.


*Canton's Objections to Expert Witness Fees Airfare Expenses:*

5:07 CV 798                                          14

        In addition to the request for attorney fees, plaintiff seeks $32,405.85 for expenses related
to this litigation. Canton lodges a general objection to witness fees for taking depositions of
defendants' experts.  Plaintiff agrees that this is not a recoverable item and withdraws $6,620.10
from the amount of expenses sought.


        Plaintiff however, will not concede to relinquish airfare expense. Plaintiff states that airfare
for his experts to travel to Cleveland from significant distances was reasonable. Canton counters that
no receipts to validate this request were produced and further that under 28 U.S.C. §1821, the
witness attendance fee is $40.00 per day and travel costs must be the "most economical rate
reasonably available." See 28 U.S.C. §1821(c)(1).


        Under 28 U.S.C. §1821, available expenses for witnesses include attendance, travel and
subsistence fees.  Subsection 1821(c)(1) allows recovery of witness travel expenses by common
carrier of  "actual expense of travel" but provides "[a] receipt or other evidence of actual cost shall
be furnished."  Where plaintiff fails to attach receipts or other evidence of actual cost, the court may
deny those witness common carrier expenses. See *World Triathalon Corp. v. Dunbar*, 539 F. Supp.
2d 1270, 1289 (D. Haw. 2008).  In *Trepel v. Roadway Express, Inc*., however,  the threshold for such
"other evidence" was set very low and satisfied merely by counsel's affidavit. [9]  Plaintiff submitted

_____

[9]  The Sixth Circuit in *Trepel v. Roadway Express, Inc.*  266 F.3d 418, 425 (6th Cir. 2001), was more liberal with
travel costs only requiring verification with counsel's affidavit:

        Actual receipts are not required by statute or case law. 28 U.S.C. § 1821(c)(1), which discusses the
        payment of a witness' expenses for travel on a common carrier, specifically states that "[a] receipt or
        other evidence of actual cost shall be furnished." 28 U.S.C. § 1821(c)(1) (1994) (emphasis added).
        Accordingly, federal courts have not required prevailing parties to present actual receipts and have

5:07 CV 798                                                    15

the affidavit of Mr. Broschay which stated, "The attached bill of costs is an accurate reflection of .

. . costs incurred by the attorneys representing Plaintiff in this matter." As in *Trepel*, Canton has no

argument that these expenses were not actually incurred. Accordingly, this item of expense stands.


***CONCLUSION AND RECOMMENDATION***

 After review of plaintiff's motion to amend judgment for attorney fees pursuant to 42 U.S.C.

§1988 and for costs pursuant to Rule 54 (ECF # 279), and the City of Canton's objections. It is

recommended that the motion be granted in part and denied in part to allow reasonable attorney fees

and expenses in the amount of $191,255.75 calculated as follows:

| Counsel | Reasonable No. Hours | Reasonable Hourly Rate | Total |
|---|---|---|---|
| Geoffrey N. Fieger | 174.00 | $400.00 | $69,600.00 |
| Paul W. Broschay | 457.10 [10] | 200.00 | 91,420.00 |
| Larry Slagle | 6.00 | 100.00 | 600.00 |

---

allowed them to include affidavits instead. See *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 65 (5th Cir.1994).

 In this case, plaintiff submitted a list of the travel expenses incurred by his witnesses. This list was accompanied by an affidavit in which his attorney swore that the taxed bill of costs was correct and that "the services for which fees have been charged were actually and necessarily performed." J.A. at 117. Given that the defendant did not supply any evidence that these costs were not actually incurred, we find that the magistrate judge's skepticism of the witness' costs is unfounded.


[10] 512.35 hours less unsuccessful motions 12.5 hours, paralegal work 7.75 hours, deposition travel 11 hours, court travel 24 hours = 457.1 hours.

5:07 CV 798                                      16

Michael Dezsi          38.50                      100.00              3,850.00

**Total Reasonable Attorney Fees**:                          **$165,470.00**

**Total Reasonable Expenses:**                               **25,785.75**

**Total Award of Fees and Expenses:**                        **$191,255.75**


          s/James S. Gallas
        United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).


Dated September 25, 2009